Dale Siniard; Amanda Siniard; Roger Dale Bailey, both individually and d/b/a Roger Bailey Construction Company; and Susan Bailey appeal from the trial court's summary judgment for Allstate Insurance Company in its declaratory judgment action. The trial court held that, as a matter of law, Allstate was not required to defend or provide liability *Page 883 
coverage for the Baileys as a result of an incident in which Dale Siniard claimed to have been injured.
Bailey Construction is licensed to construct single-family dwellings. Dale Siniard was employed by Bailey Construction for approximately 4-5 weeks to work on a project referred to as the "Fletcher house" project; while he worked on that project he was paid on an hourly basis and taxes were withheld from his paycheck. On August 20, 1992, Siniard had worked approximately 5 hours (until around lunchtime), when the Fletcher house project was completed. Thereafter, Roger Bailey asked Siniard if he wanted to help build a deck on a "spec" house (i.e., apparently a house built on "speculation" that it could be sold at a profit), located at Lot 11, Cambridge Hill Estates, in Limestone County, which Roger Bailey and his wife, Susan, owned and had listed for sale and in which they were residing. It was customary for Roger Bailey and his wife to reside in "spec" houses that he had constructed to sell, until the houses were sold. Siniard was to be paid by Bailey Construction for his work on this "spec" house at the same hourly rate as he had received working on the Fletcher house project. In constructing the deck, Siniard used a nail gun that he had used on the Fletcher house project. This gun was provided to Siniard by Roger Bailey, who admits having removed a safety device designed to prevent accidental discharge of a nail from the nail gun. As Siniard began using the nail gun, it discharged and shot a nail through his arm. The nail entered Siniard's arm, went through the bone, and came out the other side, causing Siniard severe injury and continuous pain. Siniard was never paid any money for working on the deck. At the time of the accident, Allstate had insured the Baileys' residence with a "Deluxe homeowners policy."
Dale Siniard and his wife, Amanda, sued the Baileys and Bailey Construction for workers' compensation benefits and also, pursuant to Ala. Code 1975, § 25-5-11, claimed damages based on the removal of a safety device. The Baileys and Bailey Construction made demand on Allstate to defend them in the action filed by the Siniards and to pay any judgment obtained against them, up to the limits of the policy. Subsequently, Allstate filed this action, seeking a judgment declaring that under the terms of the homeowner's policy issued to the Baileys, Allstate owed no obligation to defend the claims arising from this incident or to pay any portion of any judgment or judgments that might be rendered against the Baileys or against Bailey Construction in the Siniards' action.
The policy contains "Coverage X," entitled "Family Liability Protection," which reads as follows:
 "Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy."
An "occurrence" is defined in the policy as:
 "[A]n accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage."
Coverage X lists the following exclusions:
"Losses We Do Not Cover Under Coverage X:
". . . .
 "3. We do not cover bodily injury to any person eligible to receive benefits required to be provided or voluntarily provided by an insured person under any workers' compensation, non-occupational disability or occupational disease law.
". . . .
 "12. We do not cover bodily injury or property damage arising out of the past or present business activities of an insured person."
The Siniards amended their complaint to allege that when Dale Siniard was injured he was not working as an employee of Bailey Construction but was a "casual employee" voluntarily working on the Baileys' personal residence, and to claim damages for negligence *Page 884 
and for wantonness.[1] Allstate moved for a summary judgment, which the trial court entered. The Siniards and the Baileys appeal; Roger Bailey appeals both individually and d/b/a Bailey Construction Company.
Before May 13, 1993, which was after the date of Dale Siniard's accident, an employer in the business of "constructing or assisting on-sight in the construction of single-family, detached residential dwellings" was required to provide workers' compensation benefits for his employees, regardless of the number of employees.[2] Ala. Code 1975, §25-5-50. However, pursuant to § 25-5-50, an employer is not required to provide workers' compensation benefits to an employee whose employment at the time of an injury is casual and not in the usual course of the trade, business, profession, or occupation of the employer.
Relying on Craft v. Owens, 359 So.2d 390 (Ala.Civ.App. 1978), the Baileys and the Siniards maintain that there was a genuine issue of material fact as to whether the homeowner's policy provided by Allstate should provide coverage for the action filed against them by the Siniards, because, they say, they presented substantial evidence that Siniard was a casual employee of the Baileys, employed outside the usual course of business of Bailey Construction, and therefore not entitled to workers' compensation benefits.
Relying on Ex parte Little Cahaba Coal Co., 213 Ala. 596,105 So. 648 (1925), Allstate contends that because Roger Bailey, d/b/a Roger Bailey Construction Company, was in the business of constructing single family dwellings, and in that business was required to provide workers' compensation benefits to his employees, Siniard would be entitled to workers' compensation coverage. Therefore, Allstate argues, the summary judgment was properly entered.
In Ex parte Little Cahaba Coal Co., supra, a case factually similar to this one, the injured worker, who was a carpenter by trade and a member of a regular crew of carpenters that the defendant, Little Cahaba Coal Company, retained for various maintenance duties, was employed to perform services on the defendant's company-owned home or homes. The evidence showed that when the worker was injured he was repairing the home of the vice-president of the company. The defendant argued that even if it could be found that the worker was employed by the defendant and that the worker's injury was incurred in an accident arising out of and in the course of his employment, the worker's employment was casual and not subject to the workers' compensation law; therefore, it argued, there could be no recovery. In affirming the trial court's holding that the worker was injured in the usual course of his employment, the Court held as follows:
 "There is evidence that the decedent was a carpenter by trade; he was employed to re-cover this house of the defendant with shingles; he fell from this house while re-covering it, and died from the injuries in two or three days. The house was leased by the vice-president of defendant, but was owned by the defendant. There is evidence that the defendant kept and had a regular crew of carpenters, three or four, at the time of the injury. The employment of the deceased as a carpenter to do carpenter work at the time of the injury may have been casual, but the court could reasonably infer that the employment of carpenters and of the deceased was in the usual course of the business of the defendant, because there is evidence that defendant kept and had at that time a regular crew of carpenters to do carpenter work in its business."
213 Ala. at 598, 105 So. at 650. (Emphasis added.)
In Craft v. Owens, supra, Tom Owens, d/b/a J.A. Owens 
Company, operated a small hardware store. When Owens decided to remodel his home, he hired several persons to do the remodeling work, including Jimmy W. Craft, who was hired as a carpenter. *Page 885 
Owens paid Craft in cash, and the work performed on Owens's residence was not connected with the operation of Owens's hardware store. While employed by Owens, Craft sustained an injury that resulted in the loss of vision in one eye. Craft filed for workers' compensation benefits. The trial court held that Craft was precluded from obtaining workers' compensation benefits under the statutory provisions now found in § 25-5-50. In affirming, the Court of Civil Appeals cited Ex parte LittleCahaba Coal Co., supra, and in a footnote distinguished Exparte Little Cahaba Coal Co., as follows:
 "We note a distinction between the issue decided in the present case and the holding found in . . . [Ex parte Little Cahaba Coal Co., 213 Ala. 596, 105 So. 648 (1925)]. Little Cahaba Coal Co. . . . involved . . . a carpenter . . . employed to perform services on the employer['s] 'company owned home or homes.' Moreover, the carpenter in Little Cahaba Coal Co. was hired as a member of a regular crew of carpenters which the defendant retained for various maintenance duties. . . . On the basis of the factual situation involved in [Little Cahaba Coal Co.] our supreme court held that the trial court had correctly determined that the injured worker was entitled to workmen's compensation benefits. However, we believe that the facts on which Little Cahaba Coal Co. [was decided] are . . . clearly distinguishable from the situation before us now. Accordingly, we [do not] find [Little Cahaba Coal Co.] controlling in this instance."
359 So.2d at 391. (Citation omitted.) See, also, Elrod v. WebcoTool Die, Inc., 618 So.2d 1348 (Ala.Civ.App. 1992).
In Craft, unlike in this case, the construction or remodeling was not in the usual course of business of the defendant, who owned and operated a hardware store. Furthermore, in Craft, unlike in this case, the injured worker was not an employee of the defendant; rather, in Craft the injured worker was hired for the specific purpose of working on the defendant's home.
The holding and rationale of Little Cahaba Coal Co., supra, control this case.
Viewing the facts in the light most favorable to the nonmoving parties, as we are required to do under the applicable standard of review,[3] we find the following: Siniard was a carpenter by trade; he and others were employed as carpenters by Bailey Construction Company, which built single-family dwellings; he was hired by Roger Bailey, the owner-operator of the construction company, to build a deck on the "spec" house in which the Baileys were residing and which the Baileys had on the market for sale; for the work he performed on the deck, he was to be paid by Bailey Construction Company at the same hourly rate he had been paid for the other work he had done for Bailey Construction Company; and he was injured while working on the deck in the regular course of and in furtherance of the business of Bailey Construction Company.
Based on the foregoing, Siniard's claim against the Baileys and Bailey Construction Company falls within the scope of the workers' compensation law and, therefore, because of the express exclusions in its policy, Allstate is not required to provide coverage to, or to defend, the Baileys. The trial court properly entered the summary judgment for Allstate.
AFFIRMED.
ALMON, SHORES, INGRAM and BUTTS, JJ., concur.
[1] Amanda Siniard claimed damages for loss of consortium.
[2] Beginning May 13, 1993, such an employer would not be required to provide workers' compensation benefits, unless he employed five or more employees. Ala. Acts 1993, Act No. 93-649, § I (codified at Ala. Code 1975, § 25-5-50).
[3] West v. Founders Life Assurance of Florida, 547 So.2d 870
(Ala. 1989).