SCHNEEBERG, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

(Decided September 19, 1940.)

*Mr. Herbert A. Rosenthal* and *Mr. Frank J. Dangler, Jr.,* for appellant.

*Mr. Robert Hall* and *Mr. Joseph S. Kreinberg,* for appellees.

CARTER, J. This is an appeal on questions of law from a judgment rendered in the Court of Common Pleas of Portage county in favor of defendants, the cause being one on appeal from the decision of the Industrial Commission of Ohio denying, for lack of jurisdiction, claimant's right to an award.

In her petition appellant claims that she is entitled to an award due to the fact that her deceased husband was killed while in the course of his employment and arising out of such employment.

Defendants deny that the employer employed three or more workmen regularly in their place of business or in or about the same under a contract of hire, that as such employer he was not amenable to the workmen's compensation law, and generally deny all the allegations of the petition other than those admitted to be true.

The issues joined, the cause came on for trial to the court and jury. At the conclusion of all the evidence, on motion, the court directed a verdict in favor of appellees. The court in disposing of the motion stated to the jury:

"Members of the jury: The view that the court takes of this case, The William Wolf Company had two employees at the time of the accident in this case, and therefore he is not amenable to the Workmen's Compensation Law. Your verdict will be for the defendants and you will appoint one of your number foreman and retire to your jury room and sign the verdict."

Exceptions were noted.

Was the court in error in the direction of the verdict? The record discloses substantially the following: Regina Schneeberg, appellant, is the widow of William Schneeberg, with whom she lived until the time of his decease on March 6, 1935, and who contributed to her support. William Wolf, appellee, at the time the events hereinafter referred to occurred, maintained a store on Carnegie avenue in the city of Cleveland, oper-

ated under the name of "William Wolf & Company," being engaged in the business of jobbing auto and body supplies and paints and upholstering supplies at wholesale and retail. He was not a contributor to the workmen's compensation fund on March 6, 1935. A considerable portion of Wolf's sales were made to persons outside of the city of Cleveland through two salesmen who drove trucks owned and provided by Wolf. These two salesmen, when in the territory, carried some merchandise with them on their trucks and sold same for cash, and also took orders for future shipments and collected money due Wolf on invoices. The two salesmen were Mr. Preyer and Mr. Schneeberg, the deceased, both having been in the employ of William Wolf & Company for approximately three years. Schneeberg left Wolf's place of business on the evening of March 5, 1935, driving Wolf's truck containing Wolf's merchandise, with instructions to go on his weekly selling trip into territory outside of Cleveland. At eleven thirty a. m., March 6, 1935, Schneeberg was instantly killed while driving Wolf's truck when it collided with a coal truck at Randolph, Portage county. The record discloses that prior to his death on March 6th Schneeberg had made collections in Akron and Barberton upon invoices given him by Mr. Wolf the night before, and had made some cash sales on the day in question to two customers at Barberton.

Besides these two salesmen it is the claim of appellant that Wolf had working for him in his place of business at Cleveland a 17-year-old boy named Hall, and it appears that Hall had worked for Wolf for a number of months prior to the death of Schneeberg, and did some work after Schneeberg's death. Hall testified himself that he started working for Wolf some four years prior thereto, and worked for him last a month before the hearing, which occurred in the spring of 1938. The payroll records of Mr. Wolf, doing business as William Wolf & Company, showed that Hall

was paid and received wages for his work upon the following dates and in the following amounts: August 4, 1934, $4; August 11, 1934, $4; August 18, 1934, $4; August 25, 1934, $4; September 1, 1934, $4; September 8, 1934, $3.50; September 15, 1934, $3.50; September 22, 1934, $3; September 29, 1934, $2.50; October 6, 1934, $2.50; October 13, 1934, $2.50; October 20, 1934, $2.50; October 27, 1934, $2.50; November 3, 1934, $2.50; November 10, 1934, $2.50; November 17, 1934, $2.50; November 24, 1934, $1.25; December 1, 1934, $2.50; December 8, 1934, $1.75; December 15, 1934, $2.25; December 22, 1934, $2.50; December 29, 1934, $2.75; February 9, 1935, $1.60; March 2, 1935, $1; March 16, 1935, $2.50; March 23, 1935, $2.50; March 30, 1935, $2.50; April 6, 1935, $2.25; and May 25, 1935, $2.00. These payments were made on Saturday for the work that he did during the week. His name also appeared in the pay roll book under date of March 9, 1935, but there was no indication as to what amount, if any, had been paid on that date. It therefore appears that Hall had been working for Wolf each week from August 4, 1934, through December 29, 1934; that he worked the week before Schneeberg's death and during the week following his death, and for some little time thereafter. The record discloses that Wolf and Hall testified as to the type of work done by Hall, to wit, that he took packages to the postoffice for mailing when there were any to be mailed; that he would sweep out the store when Wolf thought it needed sweeping; unpacked boxes of merchandise; washed the windows when they needed washing; washed the company trucks on Saturday, depending somewhat upon the weather, and that each truck was washed sometimes three times a month.

The real issue to be determined in this case is whether William Wolf & Company was amenable to the Workmen's Compensation Act. The Industrial Commission's determination was in the negative, and such

was the view of the trial court. Section 1465-60, General Code, provides:

"The following shall constitute employers subject to the provisions of this act: * * *

"(2) Every person, firm and private corporation, * * * that has in service three or more workmen or operatives regularly in the same business, or in or about the same establishment under any contract or hire, express or implied, oral or written. * * *"

Section 1465-61, General Code, provides:

"The term 'employee,' 'workman' and 'operative' as used in this act, shall be construed to mean: * * *

"(2) Every person in the service of any person, firm or private corporation, * * * employing three or more workmen or operatives regularly in the same business, or in or about the same establishment under any contract of hire, express or implied, oral or written, including aliens and minors, but not including any person whose employment is but casual and not in the usual course of trade, business, profession or occupation of his employer."

Under these sections the line of demarcation between one who is and one who is not an employer and employee under the definition found in these sections, and in the light of the definition as disclosed in the case of *State, ex rel. Bettman,* v. *Christen,* 128 Ohio St., 56, 190 N. E., 233, is quite often difficult of determination.

We have examined many cases bearing on this question other than those cited in the able briefs filed, and have reached the conclusion that the employee Hall comes within the definition of an employee as defined in the statute, and particularly in the light of the elucidation of these sections as found in the *Christen case, supra,* and that therefore appellee was amenable to the Workmen's Compensation Act in that he employed at least three under the statute. As stated by the Supreme Court in the *Christen case,* the test as to what constitutes casual employment is not the length of the

employment but the nature of the employment; and that in order not to be considered an employee the workman must be both a person whose employment is of a casual nature, and, secondly, one who is employed for purposes otherwise than in the trade or business of the employer. In order not to be an employee under these sections the workman must not only be an employee whose employment is of a casual nature, but one who is employed otherwise than for the purpose of carrying on his employer's trade or business. If we are correct in this construction it could hardly be contended that the work which Hall had been in the habit of performing was not in the usual course of the employer's business, such as washing trucks used in the business, cleaning windows at the establishment, unpacking merchandise and in some instances weighing merchandise.

We have reached the conclusion that under the evidence appellee Wolf, doing business as William Wolf & Company, was an employer of three under the act, and therefore amenable to its provisions, and that the lower court erred in directing a verdict in favor of appellees.

*Judgment reversed and cause remanded.*

NICHOLS, P. J., and PHILLIPS, J., concur.